1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 22, 2020

SEAN F. McAVOY, CLERK

3

4

5

6        UNITED STATES DISTRICT COURT

7        EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 8   CARL S., | No: 2:19-CV-101-FVS |
| 9          Plaintiff, | |
|     v. | ORDER GRANTING DEFENDANT'S |
| 10 | MOTION FOR SUMMARY |
|     ANDREW M. SAUL, Commissioner | JUDGMENT |
| 11  of the Social Security Administration, | |
| 12          Defendant. | |

13

14        BEFORE THE COURT are the parties' cross-motions for summary judgment.

15  ECF Nos. 11, 15.  This matter was submitted for consideration without oral

16  argument.  Plaintiff is represented by attorney Eitan Kassel Yanich.  Defendant is

17  represented by Special Assistant United States Attorney Kathryn A. Miller.  The

18  Court, having reviewed the administrative record and the parties' briefing, is fully

19  informed.  For the reasons discussed below, the Court **DENIES** Plaintiff's Motion

20  for Summary Judgment, ECF No. 11, and **GRANTS** Defendant's Motion for

21  Summary Judgment, ECF No. 15.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

**JURISDICTION**

Plaintiff Carl S.[1] filed an application for Disability Insurance Benefits (DIB) on March 23, 2016, Tr. 109, alleging disability since May 2, 2011, Tr. 192, due to incurable heart arrhythmias, sleep apnea, degenerative disc disorder of the low back, depression, and arthritis in both knees, Tr. 215.  In October, Plaintiff filed an amended application changing this date of onset to June 19, 2015.  Tr. 194.  Benefits were denied initially, Tr. 129-32, and upon reconsideration, Tr. 134-36.  A hearing before Administrative Law Judge Marie Palachuk ("ALJ") was conducted on December 28, 2017.  Tr. 42-95.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of medical expert Jack LeBeau, M.D. and vocational expert Sharon Welter.  *Id*.  The ALJ denied benefits on March 8, 2018.  Tr. 21-34.  The Appeals Council denied Plaintiff's request for review on January 25, 2019.  Tr. 1-5.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).  ECF No. 1.

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

pertinent facts are summarized here.

Plaintiff was 59 years old at the alleged onset date.  Tr. 192.  He received his bachelor's degree in business with an emphasis in finance and received his Master's degree in business in 1991.  Tr. 216, 451.  Plaintiff worked for 35 years as a financial analyst.  Tr. 216, 450.  At application, he stated that he stopped working on June 19, 2015, due to his conditions and because he was laid off by his employer, stating "I believe largely because of my high absenteeism caused by my poor heart health."  Tr. 215.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id*.

In reviewing a denial of benefits, a district court may not substitute its

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1   judgment for that of the Commissioner.  If the evidence in the record "is susceptible

2   to more than one rational interpretation, [the court] must uphold the ALJ's findings

3   if they are supported by inferences reasonably drawn from the record." *Molina v.*

4   *Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not

5   reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is

6   harmless "where it is inconsequential to the [ALJ's] ultimate nondisability

7   determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing

8   the ALJ's decision generally bears the burden of establishing that it was harmed.

9   *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

10                              **FIVE-STEP EVALUATION PROCESS**

11          A claimant must satisfy two conditions to be considered "disabled" within the

12   meaning of the Social Security Act.  First, the claimant must be "unable to engage in

13   any substantial gainful activity by reason of any medically determinable physical or

14   mental impairment which can be expected to result in death or which has lasted or

15   can be expected to last for a continuous period of not less than twelve months."  42

16   U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must

17   be "of such severity that he is not only unable to do his previous work[,] but cannot,

18   considering his age, education, and work experience, engage in any other kind of

19   substantial gainful work which exists in the national economy." 42 U.S.C. §§

20   423(d)(2)(A), 1382c(a)(3)(B).

21          The Commissioner has established a five-step sequential analysis to determine

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4

whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d.

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1    claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

2    defined generally as the claimant's ability to perform physical and mental work

3    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

4    404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

5        At step four, the Commissioner considers whether, in view of the claimant's

6    RFC, the claimant is capable of performing work that he or she has performed in the

7    past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable

8    of performing past relevant work, the Commissioner must find that the claimant is

9    not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing

10   such work, the analysis proceeds to step five.

11       At step five, the Commissioner considers whether, in view of the claimant's

12   RFC, the claimant is capable of performing other work in the national economy.  20

13   C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must

14   also consider vocational factors such as the claimant's age, education, and past work

15   experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to

16   other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

17   § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis

18   concludes with a finding that the claimant is disabled and is therefore entitled to

19   benefits.  20 C.F.R. § 404.1520(g)(1).

20       The claimant bears the burden of proof at steps one through four.  *Tackett v.*

21   *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 6

burden shifts to the Commissioner to establish that (1) the claimant is capable of

performing other work; and (2) such work "exists in significant numbers in the

national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386,

389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since June 19, 2015, the alleged onset date.  Tr. 23.  At step two, the ALJ

found that Plaintiff has the following severe impairments: cardiac arrhythmias; sleep

apnea; and degenerative disc disease of the spine.  Tr. 23.  At step three, the ALJ

found that Plaintiff does not have an impairment or combination of impairments that

meets or medically equals the severity of a listed impairment.  Tr. 26.  The ALJ then

found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §

404.1567(b) except he has the following limitations:  "the claimant can only

occasionally balance, stoop, kneel, crouch, and crawl, rarely climb stairs, and never

climb ladders, ropes, or scaffolds.  In addition, the claimant must avoid concentrated

exposure to extreme temperatures and vibrations, as well as all exposure to hazards."

Tr. 27.

At step four, the ALJ identified Plaintiff's past relevant work as accountant

and investment analyst, and found that he is capable of performing this past relevant

work as generally performed.  Tr. 33.  The ALJ concluded that Plaintiff has not been

under a disability, as defined in the Social Security Act, from June 19, 2015, through

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

1  the date of her decision.  Tr. 33.

**ISSUES**

3  Plaintiff seeks judicial review of the Commissioner's final decision denying

4  him DIB under Title II of the Social Security Act.  ECF No. 11.  Plaintiff raises the

5  following issues for this Court's review:

6  1.  Whether the ALJ erred in weighing the medical source opinions;

7  2.  Whether the ALJ properly considered Plaintiff's symptom claims; and

8  3.  Whether the ALJ properly assessed Plaintiff's RFC and made a proper step

9  four determination.

**DISCUSSION**

11  **1.  Medical Source Opinions**

12  Plaintiff challenges the weight the ALJ assigned to David Broudy, M.D., John

13  Daniel, M.D., and Rebecca Alexander, Ph.D.  ECF No. 11 at 12-15.

14  There are three types of physicians: "(1) those who treat the claimant (treating

15  physicians); (2) those who examine but do not treat the claimant (examining

16  physicians); and (3) those who neither examine nor treat the claimant [but who

17  review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v.*

18  *Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).  Generally, a

19  treating physician's opinion carries more weight than an examining physician's, and

20  an examining physician's opinion carries more weight than a reviewing physician's.

21  *Id.*  If a treating or examining physician's opinion is uncontradicted, the ALJ may

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8

reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

### a.    David Broudy, M.D.

On April 8, 2016, Dr. Broudy completed a Cardiac Arrythmia Medical Source Statement form.  Tr. 404-07.  He stated that he had treated Plaintiff twice a year for twenty years.  Tr. 404.  He stated that Plaintiff experienced atrial/supraventricular arrythmias and his prognosis was fair.  *Id*.  He stated that during episodes of arrhythmias Plaintiff experienced weakness, shortness of breath, near syncope, syncope, palpitations, light headedness, chronic fatigue, nausea, and dizziness.  *Id*. He stated that episodes typically occur several times a week but less often than daily lasting four to eight hours.  *Id*.  He further stated that Plaintiff must typically rest for forty-eight hours after an episode.  *Id*.  He stated that episodes were more frequent with stress.  Tr. 405.  He acknowledged that Plaintiff's cardiac condition could affect his mood.  *Id*.  He stated that Plaintiff would need a job that would permit shifting positions at will from sitting, standing, or walking.  Tr. 406.  He limited Plaintiff's lifting and carrying to occasionally less than ten pounds and rarely ten pounds.  Tr. 406.  He precluded Plaintiff from any exposure to cigarette smoke and soldering

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

1  fluxes, stated he should avoid even moderate exposure to solvents/cleaners and

2  chemicals, and stated he should avoid exposure to extreme cold, extreme heat, high

3  humidity, wetness, fumes, odors, gasses, and dust.  *Id*.  He opined that Plaintiff

4  would be off task twenty-five percent or more of the workday.  Tr. 407.  He

5  acknowledged that Plaintiff's impairments would cause him to have "good days"

6  and "bad days," and that Plaintiff likely would be absent from work as a result of the

7  impairments or treatment at a rate of more than four days per month.  *Id*.  He

8  acknowledged that Plaintiff experienced some psychological limitations "[p]rimarily

9  from his cardiac disease resulting emotional stress."  *Id*.  He stated that these

10  symptoms and functional limitations existed as of June 1, 2015.  *Id*.

11      The ALJ gave the opinion little weight for four reasons: (1) the opinion was

12  from early 2016 and Dr. Broudy had not seen or treated Plaintiff since shortly after

13  that time; (2) other specialist opinions in the record contradict the opinion; (3) the

14  opinion was inconsistent with the record as a whole; and (4) Dr. Broudy's statement

15  concerning the number of days Plaintiff would miss were speculative and

16  inconsistent with the record.  Tr. 32-33.

17      The ALJ's first reason for rejecting Dr. Broudy's opinion, that it was from

18  early 2016 and Dr. Broudy had not seen or treated Plaintiff since shortly after that

19  time, is not specific and legitimate.  The Ninth Circuit has found that "[m]edical

20  opinions that predate the allege onset of disability are of limited relevance."

21  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

However, Dr. Broudy's opinion is well after Plaintiff's alleged date of onset. The ALJ is tasked with addressing Plaintiff's RFC for the entire period in question. Tr. 157-58. Therefore, the fact that the opinion is from earlier in the time period has little relevance on its reliability.

The ALJ's second reason for rejecting Dr. Broudy's opinion, that other specialist opinions contradict the opinion, is not specific and legitimate. Whether or not an opinion is contradicted by another opinion in the record dictates what an ALJ must provide in order to reject an opinion, *Holohan,* 246 F.3d at 1201-02, but it does not rise to the level of a specific and legitimate reason for rejecting an opinion.

The ALJ's third reason for rejecting Dr. Broudy's opinion, that it was inconsistent with the record as a whole, is not specific and legitimate. A physician's opinion may be discounted if it is unsupported by the record as a whole. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the ALJ found that the record showed his atrial fibrillation often resolves itself before he reaches the hospital. Tr. 32 *citing* Tr. 393 (an April 20, 2015 Emergency Room report stating Plaintiff had been in atrial fibrillation following a motor cross race, he took his medication, and started to head to the emergency room but he converted back into a normal rhythm by the time he arrived); Tr. 312 (a December 15, 2015 report stating that he had been at the emergency room on December 12th and 14th for atrial fibrillation, but he spontaneously converted into sinus rhythm both times); Tr. 324, 354 (emergency room reports from December 12, 2015 and December 14, 2015); Tr. 691 (a January

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

15, 2017 emergency room for atrial fibrillation stating he converted into sinus rhythm on his way to the hospital).  The evidence the ALJ cites supports her determination that when Plaintiff experiences atrial fibrillation it often resolves before he reaches the hospital, but the ALJ fails to state how this undermines Dr. Broudy's opinion.  Therefore, this is not specific and legitimate.  *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (the specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (the ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct.").

The ALJ's fourth reason for rejecting Dr. Broudy's opinion, that it was speculative and inconsistent with Plaintiff's reports, is specific and legitimate.  The ALJ noted that Dr. Broudy's opinion regarding Plaintiff's absenteeism was inconsistent with Plaintiff's reports that these episodes happen only once or twice a month.  Tr. 32-33.  Dr. Broudy opined that Plaintiff would miss more than four days of work per month due to his impairments and treatment if he worked a forty-hour workweek.  Tr. 407.  Plaintiff testified that he was experiencing arrhythmias about every two to three weeks.  Tr. 75.  At the December 28, 2017 hearing, Plaintiff stated that the last two episodes of arrythmias were on December 7, 2017, and December 25, 2017.  Tr. 73-75.  Plaintiff testified that these episodes "feels like your

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

heart's coming out of your throat.  To say that it's distracting would be grossly

understating the situation.  I can't function.  I feel sick.  I feel sweaty, nauseous,

dizzy" and short of breath.  Tr. 74.  He stated that the episode on December 7, 2017,

resulted in him being hospitalized for two and a half days to change his medications.

Tr. 75.  He stated that the episode on December 25, 2017, lasted about an hour and a

half.  Tr. 74.  Arguably, Plaintiff's testimony supports Dr. Broudy's opinion that

Plaintiff would miss work due to his impairments and treatment, but it does not

support the frequency opined by Dr. Broudy as even with the hospitalization to

change Plaintiff's medications, it did not exceed four days.  Therefore, this reason

meets the specific and legitimate standard.

   In conclusion, the Court will not disturb the ALJ's treatment of Dr. Broudy's

opinion.  While not all of the reasons the ALJ provided in rejecting the opinion met

the specific and legitimate standard, the fourth reason did.  Therefore, any error

would be considered harmless.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error

was inconsequential to the ultimate nondisability determination").

   **b.    John Daniel, M.D.**

   On March 24, 2016, Dr. Daniel stated that Plaintiff "is disabled due to his

recurrent atrial fibrillation uncontrolled/central sleep apneas."  Tr. 389.  He repeated

this statement on August 24, 2017.  Tr. 2423.

   On March 24, 2016, Dr. Daniel also completed a Cardia Arrhythmia Medical

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

Source Statement.  Tr. 2416-19.  He stated that Plaintiff experienced

atrial/supraventricular arrhythmias and ventricular arrhythmias and his prognosis

was fair.  Tr. 2416.  He listed Plaintiff's symptoms during arrhythmias as weakness,

shortness of breath, near syncope, syncope, palpitations, light headedness, chronic

fatigue, nausea, and dizziness.  *Id*.  He stated that these episodes typically occur

several times a week but less often than daily.  *Id*.  He stated that these episodes

typically last four to eight hours and that Plaintiff would typically rest 48 hours after

each episode.  *Id*.  He stated that stress was a trigger and that Plaintiff was incapable

of even low stress work.  Tr. 2417.  He acknowledged that Plaintiff's cardiac

conditions affect his mood and anxiety.  *Id*.  He stated that Plaintiff could walk half a

block at one time before stopping.  *Id*.  He stated Plaintiff could sit for thirty minutes

and stand for fifteen minutes at one time.  *Id*.  He limited Plaintiff's total sitting and

total standing/walking both to less than two hours total in an eight-hour workday.

Tr. 2418.  He stated that Plaintiff would need to rest 5 times a day for thirty minutes

each time before returning to work.  *Id*.  He limited Plaintiff's lifting and carrying to

less than ten pounds occasionally and ten pounds rarely.  *Id*.  He precluded any

exposure to cigarette smoke and soldering fluxes.  *Id*.  He stated that Plaintiff should

avoid even moderate exposure to solvents/cleaners and chemicals.  *Id*.  He stated that

Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, high

humidity, wetness, fumes, odors, gases, and dust.  *Id*.  He opined that Plaintiff would

be off task twenty-five percent or more of the day.  Tr. 2419.  He stated that Plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

would have good days and bad days and would likely be absent from work as a result of his impairments or treatment more than four days per month.  *Id*.

The ALJ gave the opinion little weight for five reasons: (1) Dr. Daniel is a general practitioner and not a specialist; (2) the opinion is from early 2016 and he has not seen or treated Plaintiff since that time; (3) his opinions are contradicted by those of Dr. McKinnons and Dr. Lebeau; (4) the opinion is inconsistent with the record as a whole; and (5) the opinion is inconsistent with Plaintiff's own reports of activity.

The ALJ's first reason for rejecting Dr. Daniel's opinion, that he is not a specialist, is not specific and legitimate.  Whether or not a provider is a specialist is one of the factors an ALJ is to consider when weighing opinion evidence.  20 C.F.R. § 404.1527(c).  However, it does not rise to the level of specific and legitimate when rejecting an opinion.

The ALJ's second reason for rejecting Dr. Daniel's opinion, that it is from early 2016 and he has not treated Plaintiff since, is not specific and legitimate.  As discussed above, the ALJ was tasked with assessing Plaintiff's RFC for the entire relevant time period.  Tr. 157-58.  Therefore, the fact that this opinion comes from early in the relevant period is of little relevance in weighing the opinion evidence.

The ALJ's third reason for rejecting Dr. Daniel's opinion, that it is inconsistent with the opinions of other specialists, is not specific and legitimate.  Whether or not an opinion is contradicted by another opinion in the record dictates

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

what an ALJ must provide in order to reject an opinion, *Holohan,* 246 F.3d at 1201-02, but it does not rise to the level of a specific and legitimate reason for rejecting an opinion.

The ALJ's fourth reason for rejecting Dr. Daniel's opinion, that it is inconsistent with the record as a whole and his own reports, is specific and legitimate. A physician's opinion may be discounted if it is unsupported by the record as a whole. *Thomas*, 278 F.3d at 957. Dr. Daniel stated that Plaintiff would experience episodes of arrhythmia several times a week but less often than daily. Tr. 2416. This is inconsistent with Plaintiff's reports to providers and his testimony at the hearing that he experiences episodes every two to three weeks. Tr. 75, 744. Therefore, the ALJ's reason is supported by substantial evidence and meets the specific and legitimate standard.

The ALJ's fifth reason for rejecting Dr. Daniel's opinion, that it is inconsistent with Plaintiff's reported activities, is specific and legitimate. A claimant's statements about his activities may be seen as inconsistent with the presence of a disabling condition. *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). The ALJ stated that Dr. Daniel's 2016 opinion was inconsistent with his reported activities in 2016, which included mechanic duties in his personal shop, working on motorcycles, hunting, fishing, and participating in motocross racing. Tr. 32. In an initial evaluation for physical therapy in October of 2016, Plaintiff reported that "He enjoys performing mechanic duties in his personal shop where he enjoys working on

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1  motorcycles.  He also enjoys hunting, fishing, and continues to participate in

2  motocross racing."  Tr. 662.  Therefore, the ALJ's reason is supported by substantial

3  evidence and meets the specific and legitimate standard.

4      In conclusion, the ALJ did not error in rejecting Dr. Daniel's opinion.  The

5  first three reasons the ALJ discussed are factors he is required to consider while

6  weighing opinion evidence.  *See* 20 C.F.R. § 404.1527(c); *Trevizo v. Berryhill*, 871

7  F.3d 664, 675 (9th Cir. 2017).  The remaining reasons provided by the ALJ met the

8  specific and legitimate standard.  Therefore, the Court will not disturb the ALJ's

9  treatment of Dr. Daniel's opinions.

10      **c.     Rebecca Alexander, Ph.D.**

11      On August 24, 2016, Dr. Alexander completed a psychological consultative

12  evaluation.  Tr. 450-55.  She diagnosed Plaintiff with persistent depressive disorder,

13  generalized anxiety disorder, and somatic symptom disorder.  Tr. 454.  She opined

14  that Plaintiff's "ability to understand and remember information is not impaired.

15  Ability to sustain concentration and persist is moderately impaired by anxiety and

16  depression.  Ability to interact appropriately in the work place and adapt to stress

17  and change is moderately impaired by depression/anxiety."  Tr. 454.

18      The ALJ gave the opinion little weight for four reasons: (1) Dr. Alexander

19  only examined Plaintiff once; (2) the opinions were inconsistent with Dr.

20  Alexander's finings during the examination; (3) the opinions were inconsistent with

21  Plaintiff's lack of complaints and treatment for his psychological symptoms; and (4)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 17

the moderate limitations in the ability to interact with others was inconsistent with the objective findings throughout the record.  Tr. 26.

The ALJ's first reason for rejecting Dr. Alexander's opinion, that she only examined Plaintiff once, is not specific and legitimate.  The status of an examining or treating provider is a factor that an ALJ is required to consider when weighing an opinion, 20 C.F.R. § 404.1527(c), and it dictates the weight assigned to the opinion, *Holohan,* 246 F.3d at 1201-02, but it does not rise to the level of a specific and legitimate reason for rejecting an opinion.

The ALJ's second reason for rejecting Dr. Alexander's opinion, that it was inconsistent with her findings during the examination, is specific and legitimate. The Ninth Circuit has found that inconsistencies between the opinion and the treatment notes from the same day of the opinion meets the heightened standard of clear and convincing.  *Bayliss*, 427 F.3d at 1216.  The ALJ specifically found that Dr. Alexander's opined moderate limitations were not consistent with her findings that he could repeat six digits forward and three digits backward, recall three out of three objects after a delay, spell world forwards and backwards, was cooperative and pleasant with average eye contact, maintained attention throughout the evaluation with clear speech and presented as only moderately depressed, and reported a full range of activities of daily living.  Tr. 26.  The results of the mental status exam do not support a moderate limitation in attention, concentration, and interacting appropriately.  Therefore, the ALJ's reason is supported by substantial evidence and

1      meets the specific and legitimate standard.

2         The ALJ's third reason for rejecting Dr. Alexander's opinion, that it was

3 inconsistent with Plaintiff's lack of complaints and treatment for his psychological

4 symptoms, is not specific and legitimate.  First, the ALJ's finding that the record

5 shows a lack of complaints or treatment is not an accurate representation of the

6 record as a whole.  Plaintiff sought treatment for his depression and anxiety.  Tr. 314

7 (diagnosed with major depressive disorder and started on fluoxetine); Tr. 389 ("He

8 will continue rx with proazc [sic] for the depression and anxiety").  Second, the

9 Ninth Circuit has found that "it is a questionable practice to chastise one with a

10 mental impairment for the exercise of poor judgment in seeking rehabilitation."

11 *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  Therefore, this falls short of

12 the specific and legitimate standard.

13         The ALJ's fourth reason for rejecting Dr. Alexander's opinion, that it was

14 inconsistent with the objective findings throughout the record, is specific and

15 legitimate.  A physician's opinion may be discounted if it is unsupported by the

16 record as a whole.  *Thomas*, 278 F.3d at 957.  Here, the ALJ found that the record

17 demonstrated that Plaintiff was able to regularly attend appointments and presented

18 to treatment as cooperative.  Tr. 26.  Here, the record supports the ALJ's

19 determination.  There is no evidence of Plaintiff's arriving late or missing

20 appointments.  Furthermore, the record shows he is cooperative and appropriate

21 throughout the record.  Tr. 389, 451, 741, 2432.  Therefore, the Court will not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 19

1   disturb the ALJ's treatment of Dr. Alexander's opinion.

2   **2.    Plaintiff's Symptom Claims**

3       Plaintiff challenges the ALJ's treatment of his symptom statements.  ECF No.

4   11 at 15-19.

5       It is generally the province of the ALJ to make determinations regarding the

6   reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035,

7   1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent

8   reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

9   affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

10  testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

11  1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.  "General findings are

12  insufficient:  rather the ALJ must identify what testimony is not credible and what

13  evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

14      The ALJ found Plaintiff's "statements concerning the intensity, persistence,

15  and limiting effects of these symptoms are not entirely consistent with the medical

16  evidence and other evidence in the record for the reasons explained in this decision."

17  Tr. 28.  The ALJ identified four reasons for rejecting Plaintiff's symptom

18  statements:  (1) the statements are inconsistent with the objective medical evidence;

19  (2) the statements are inconsistent with Plaintiff's treatment history; (3) the

20  statements are inconsistent with Plaintiff's activities of daily living; and (4) the

21  statements were inconsistent with Plaintiff's receipt of unemployment benefits.  *Id*.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 20

The ALJ's first reason for rejecting Plaintiff's symptom statements, that they are inconsistent with the objective medical evidence, is specific, clear and convincing.  Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the only reason for rejecting a claimant's credibility.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The ALJ found that Plaintiff's statements concerning his low back pain were not supported by the objective findings that he walked with a normal gait and had normal muscle tone and strength.  Tr. 29 *citing* Tr. 558.

Additionally, the ALJ found that Plaintiff stated that he experienced atrial fibrillation once to twice a month, but the record did not show that he reported to the hospital with the condition that frequently and when he did report, his atrial fibrillation often resolved before he reached the hospital.  Tr. 29.  Plaintiff does not challenge the ALJ's representation of the evidence, but argues with the conclusion that just because Plaintiff does not present to the hospital with every episode of atrial fibrillation that these episodes are not serious or that they would not interfere with his ability to work.  ECF No. 11 at 18.  This is a reasonable interpretation of the evidence.  However, the ALJ found that the frequency reported was not supported in the record without the documented episodes.  This is also a reasonable interpretation of the evidence.  Therefore, the Court will not disturb the ALJ's determination.  *See Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1   The ALJ's second reason for rejecting Plaintiff's symptom statements, that

2 they were inconsistent with Plaintiff's treatment history, is specific, clear and

3 convincing.  The ALJ found that in reference to Plaintiff's sleep apnea, the records

4 showed he had been unable to use a continuous positive airway pressure (CPAP)

5 machine, but the records also show that he had not sought treatment through any

6 alternative options.  Tr. 29.  The ALJ stated that "[t]his lack of treatment does not

7 support his allegation that his sleep apnea is a disabling condition." *Id*.  Plaintiff

8 argues that he takes medication to sleep, ECF No. 11 at 18, but in reviewing the

9 medical expert's testimony, alternative treatment for sleep apnea involves treating

10 the hypoxia with alternatives to the face mask of the CPAP machine, and not

11 medication.  Tr. 55-56.

12   The ALJ's third reason for rejecting Plaintiff's symptom statements, that they

13 were inconsistent with Plaintiff's reported daily activities, is not specific, clear and

14 convincing.  A claimant's daily activities may support an adverse credibility finding

15 if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is

16 able to spend a substantial part of his day engaged in pursuits involving performance

17 of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495

18 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

19 1989)).  "The ALJ must make 'specific findings relating to [the daily] activities' and

20 their transferability to conclude that a claimant's daily activities warrant an adverse

21 credibility determination." *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th

1    Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for

2    benefits.  *Fair*, 885 F.2d at 603.

3         Here, the ALJ found that in March of 2016, Plaintiff "reported maintaining an

4    active lifestyle including riding his bike, running for two miles, and doing strength

5    training on most days of the week."  Tr. 28 *citing* Tr. 381; Tr. 29 *citing* Tr. 381.

6    Additionally, the ALJ found that in August of 2016, Plaintiff "reported a full range

7    of activities of daily living including preparing meals, showering, dressing, checking

8    email, paying bills, watching the news, working on repair projects in the garage,

9    mowing the lawn, and taking out the garbage."  Tr. 28 *citing* Tr. 452.  The ALJ

10   concluded that this full range of activities and active physical lifestyle did not

11   support his alleged severity of limitations.  Tr. 28.  The Court recognizes that the

12   Ninth Circuit has cautioned ALJs about relying on the performance of typical daily

13   activities as inconsistent with the allegations of severe symptoms.  *Garrison v.*

14   *Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  Therefore, the ALJ's reliance on

15   Plaintiff's "reported full range of activities of daily living" summarized by the ALJ

16   is not specific, clear and convincing.  However, Plaintiff's reported "active lifestyle"

17   demonstrates inconsistencies between his alleged severity of symptoms limiting his

18   physical functional ability and his reported activities in 2016.  Biking, running,

19   strength training, and mowing the lawn are all inconsistent with his repeated

20   allegations of limitations in walking, standing, and physical exertion.  Plaintiff

21   argues that since he was no longer participating in these activities at the time of his

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 23

hearing, these cannot be used to undermine his symptom statements.  ECF No. 11 at 18.  However, these reported activities are inconsistent with his reported severity of symptoms and resulting limitations in the same month in 2016.  He made the statements regarding his active lifestyle in March of 2016.  Tr. 381.  In April of 2016, he reported he had limited activity/mobility, Tr. 230, and that he could no longer fish, hunt, weight lift, or participate in motocross, Tr. 234.  Therefore, his contemporaneous statements demonstrate the inconsistency between his reported activities and his alleged limitations.  As such, this meets the specific, clear and convincing standard.

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that they were inconsistent with Plaintiff's receipt of unemployment benefits, is not specific, clear and convincing.  The receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime.  *See Carmickle*, 533 F.3d at 1161-62.  Here, the record demonstrates that Plaintiff received unemployment benefits, but it does not establish whether Plaintiff held himself out as available for full-time or part-time work.  Tr. 204.  Only the former would support a finding that the receipt of unemployment benefits as inconsistent with his disability allegations.  *Carmickle*, 533 F.3d at 1161-62.  As such, this reason fails to meet the specific, clear and convincing standard.

In conclusion, the ALJ provided specific, clear and convincing reasons to support her determination that Plaintiff was less than fully credible.  *See Carmickle*,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided

four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d

at 1197 (affirming a credibility finding where one of several reasons was

unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless

when "it is clear from the record that the . . . error was inconsequential to the

ultimate nondisability determination").

**3.    RFC and Step Four**

Plaintiff argues that the ALJ's RFC assessment is erroneous and not supported

by substantial evidence and that this erroneous RFC resulted in an erroneous step

four determination.  ECF No. 11 at 19.  However, this argument is premised on the

Court finding that the ALJ erred in the treatment of the medical opinion evidence

and Plaintiff's symptom statements.  *Id*.  Because the Court did not find any harmful

error in regard to the ALJ's treatment of the medical opinions or Plaintiff's symptom

statements, it will not disturb the ALJ's RFC or step four determinations.

**CONCLUSION**

A reviewing court should not substitute its assessment of the evidence for the

ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to

an ALJ's assessment so long as it is supported by substantial evidence.  42 U.S.C. §

405(g).  As discussed in detail above, the ALJ properly considered the medical

opinion evidence, provided clear and convincing reasons to discount Plaintiff's

symptom claims, and did not err in her RFC and step four determinations.  After

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 25

review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED June 22, 2020.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge